IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 27, 2010

**STATE OF TENNESSEE v. RICKY N. BERRY**

**Appeal from the Criminal Court for Hamblen County**
**No. 07CR645      John F. Dugger, Jr., Judge**

_____

**No. E2009-02028-CCA-MR3-CD - Filed September 30, 2010**

_____

The Defendant, Ricky N. Berry, was convicted after a jury trial in the Hamblen County Criminal Court of driving under the influence (DUI), third offense, a Class A misdemeanor. The trial court sentenced the Defendant to eleven months, twenty-nine days and ordered that the Defendant serve fifty-five percent of his sentence, 200 days, in confinement. On appeal, the Defendant contends that the evidence was insufficient to support his conviction and that his sentence was excessive. We affirm the judgment of the trial court.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Russell Mattocks, Assistant Public Defender, for the appellant, Ricky N. Berry.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; C. Berkeley Bell, District Attorney General; and Kevin Keeton, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

At the trial, Morristown Police Officer David Hancock testified that he stopped the Defendant around 3:00 a.m. on December 23, 2006. The Defendant was driving northbound toward Officer Hancock, who was traveling southbound on North Liberty Hill Road. Officer Hancock testified that after the Defendant's car passed him, it left the roadway, struck the curb, and came back into the roadway. Officer Hancock turned around and followed the Defendant's car. He turned on his emergency lights, which activated the patrol car's video camera. The Defendant stopped his car.

Officer Hancock testified that on approaching the car, he noticed that the Defendant smelled of alcohol and that the Defendant's speech was somewhat slurred. Officer Hancock stated that in response to his initial questions, the Defendant said that he had a couple of beers and was coming from Newport. Officer Hancock testified that he asked the Defendant to leave his car and that as the Defendant did so, he was unsteady on his feet. Officer Hancock stated that he asked the Defendant to perform four field sobriety tests: the A-B-C test; the finger dexterity test; the nine-step, walk-and-turn test; and the one-legged stand test.

Officer Hancock testified that before giving test instructions, he asked the Defendant his level of education and if he had any medical conditions that might interfere with his ability to perform field sobriety tests. According to the officer's testimony, the Defendant answered that he finished high school and that his family had a "stagger step." Officer Hancock testified that for the A-B-C test, he instructed the Defendant to recite the alphabet from "C" to "Q," but the Defendant recited from "A" to "S" instead. For the finger dexterity test, Officer Hancock stated that the Defendant was unable to touch his fingertips with his thumb and that his count was "off." The officer testified that both the A-B-C and finger dexterity tests measured an individual's ability to divide attention among multiple tasks and listen to instructions. Officer Hancock stated that the Defendant's results on both tests showed a possibility of impairment that warranted further field sobriety testing.

Officer Hancock testified that after he gave instructions for the one-legged stand, the Defendant began to demonstrate that he was unable to perform the test, saying that he would not be able to do the test even without drinking anything. Officer Hancock stated that he scored the Defendant's attempt, noting that the Defendant was unable to keep his balance when he lifted his foot.

Officer Hancock testified that the Defendant consented to perform the nine-step, walk-and-turn test. Officer Hancock stated that the Defendant lost his balance during the instruction stage and then missed the heel-to-toe position and stepped off the line in both directions. Officer Hancock noted that the Defendant exhibited three of the eight clues possible during the nine-step, walk-and-turn test and that a score of two clues indicated some level of impairment.

Officer Hancock testified that after administering the field sobriety tests, he arrested the Defendant based on the Defendant's driving, odor of alcohol, unsteadiness, and performance on sobriety tests. Officer Hancock stated that he read the implied consent form for breathalyzer and blood alcohol tests to the Defendant and asked the Defendant to submit to the tests. Officer Hancock said that the Defendant refused to take either test and refused to sign the implied consent form. Officer Hancock testified that he routinely wrote, "refused to sign" on an implied consent form when a defendant refused to sign. Officer Hancock

stated that he lost the Defendant's implied consent form when a box of case files was misplaced while his patrol car was being serviced. The State played the videotape of the traffic stop and field sobriety tests.

On cross-examination, Officer Hancock admitted that field sobriety tests provided indicators but not proof of impairment. On redirect examination, Officer Hancock testified that he arrested the Defendant due to all his observations and the Defendant's admission of drinking, not solely because of the field sobriety tests.

The Defendant's sister, Regina Berry, testified that the Defendant visited her from 9:00 p.m. on December 22, 2006, to 3:15 a.m. on December 23 and that the Defendant took a nap from 12:30 or 1:00 a.m. to about 3:15 a.m. On cross-examination, Ms. Berry testified that while the Defendant was at her house, she did not notice any odor of alcohol on the Defendant, unsteadiness in his gait, or difference from his normal speech. Ms. Berry stated that the drive between the two homes took about three minutes.

The Defendant testified that when Officer Hancock stopped him on December 23, 2006, he was tired because he had not slept since working third shift from 11:00 p.m. on December 21 to 7:00 a.m. on December 22. The Defendant stated that after leaving work on December 22, he went Christmas shopping during the day. The Defendant stated that he wrapped presents at his home from 7:00 p.m. to 9:00 p.m. on December 22, after which he visited his sister's home until 3:15 a.m. on December 23 when he left for his own home.

The Defendant testified that when Officer Hancock saw him swerve, he was attempting to miss something in the road that "looked like a big rock sitting out there or either an animal or something run across the road . . . ." The Defendant said that he did not drink any alcohol between leaving work at 7:00 a.m. on December 22 and leaving his sister's house at about 3:15 the next morning. The Defendant acknowledged telling Officer Hancock at the scene that he may have had two beers, but he said that when he made the statement, he misunderstood the question because he was cold and nervous.

The Defendant testified that his family was subject to a crippling condition. On cross-examination, the Defendant admitted that he had not been diagnosed with this condition. The Defendant also testified that he had a medical history of a fractured leg and chronic fluid build-up in his knee. The Defendant agreed that at the scene, he only told Officer Hancock that his family had "staggering steps."

The Defendant testified that although Officer Hancock asked him to take breathalyzer and blood alcohol tests, the officer did not read an implied consent form to him or ask him to sign a form. The Defendant stated that he and Officer Hancock argued in the patrol car

and that the Defendant was angry that Officer Hancock would not take him home because the traffic stop was "right there at [his] house." In rebuttal, Officer Hancock agreed that he and the Defendant argued in the patrol car but said that he read the implied consent form to the Defendant.

The Defendant stipulated to the facts of his two previous DUI convictions. After the jury convicted the Defendant, the trial court found him guilty of DUI, third offense, and sentenced the Defendant to eleven months, twenty-nine days. This appeal followed.

**I**

The Defendant contends that the evidence was insufficient to support a conviction for driving under the influence. The State responds that the arresting officer's testimony, videotape of the traffic stop, and field sobriety test results reflected in both the testimony and videotape were sufficient to support the Defendant's conviction. We agree with the State.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This means that we may not reweigh the evidence but must presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Any questions about the credibility of the witnesses were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

The Defendant argues that the proof was insufficient because his family medical history explained his poor performance on two of the field sobriety tests. He also notes that no blood alcohol test was given.

In the light most favorable to the State, the proof shows that Officer Hancock stopped the Defendant after he saw him swerving his car off the roadway and hitting a curb. The Defendant smelled of alcohol, had somewhat slurred speech, was unsteady on his feet, and exhibited indicators of impairment during four field sobriety tests. The videotape corroborated the arresting officer's testimony about the traffic stop, questioning, sobriety tests, and arrest. A reasonable trier of fact could have found beyond a reasonable doubt that the Defendant was driving an automobile while under the influence of alcohol. The Defendant is not entitled to relief on this issue.

## II

The Defendant contends that the trial court's sentencing was excessive because the trial court did not appropriately apply enhancement factors (1) regarding prior criminal history and (10) regarding lack of hesitation in committing a crime with high risk to human life. See T.C.A. § 40-35-114(1), (10) (2006). The State agrees that it did not offer proof that any specific individual's life was placed at risk by the Defendant's action and that the trial court should not have considered enhancement factor (10). However, the State argues that the sentence was justified based on application of enhancement factor (1) alone. We agree that the trial court's application of enhancement factor (1) supports the sentence.

Appellate review of misdemeanor sentencing is de novo on the record with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d) (2006). This presumption of correctness is conditioned upon the affirmative showing that the trial court considered the relevant facts, circumstances, and sentencing principles. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). As the Sentencing Commission Comments to section 40-35-401(d) note, the burden is now on the appealing party to show that the sentence is improper.

With regard to DUI offenses, Tennessee Code Annotated section 55-10-403(a)(1) sets mandatory minimum periods for confinement depending on if the offense is a first or subsequent offense, and subsection (m) provides, "Nothing in . . . the Sentencing Reform Act of 1989 [ ] shall be construed as altering, amending or decreasing the penalties established in this section for the offense of driving under the influence of an intoxicant." T.C.A. § 55-10-403(m) (Supp. 2006) (amended 2007, 2008, 2009). In addressing if DUI offenders must be sentenced in accordance with the sentencing act, our supreme court noted that

> the legislature has specifically excluded DUI offenders from the provisions of the Act when the application of the Act would serve to either alter, amend, or decrease the specific penalties provided for DUI offenders. A trial judge may designate a service percentage in a DUI case under Tennessee Code Annotated Section 40-35-302(d) but that percentage may not operate to reduce the mandatory minimum sentencing provisions of the DUI statute.

State v. Palmer, 902 S.W.2d 391, 394 (Tenn. 1995). A DUI offender may be sentenced to serve the maximum punishment for the offense so long as the imposition of that sentence is in accordance with the principles and purposes of the Criminal Sentencing Reform Act of

1989. Id. However, "[t]he sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." T.C.A. § 40-35-103(4) (2006).

The trial court sentenced the Defendant to the statutory period of eleven months, twenty-nine days and exercised its discretion in ordering the Defendant to serve 200 days in confinement, which is eighty days over the minimum statutory requirement for DUI, third offense. See T.C.A. § 55-10-401(a)(1)(A)(v) (2008).

The Defendant admits that he has a criminal history but argues that the trial court erred by considering unknown dispositions and dismissals. At the sentencing hearing, the trial court cited the presentence report and noted that the Defendant had two convictions for public intoxication, one in 2001 and one in 2006. We note that the presentence report lists the earlier public intoxication charge's disposition as unknown, but the Defendant concedes in his appellate brief that this charge resulted in a conviction. The trial court mentioned a dismissed domestic violence charge, a simple assault charge with no disposition listed, and a charge of marijuana possession with no disposition listed. The trial court expressed concern that the Defendant's criminal record showed an alcohol problem.

When questioned by the trial court, the Defendant testified that he pled guilty to and was granted diversion on the possession of marijuana charge. The Defendant stated that he did not remember the simple assault charge. The Defendant asked the trial court to consider that his DUI convictions were separated by several years, with the first in 1998 and the second in 2003, before this conviction for a 2006 incident. The Defendant asked for leniency because he had a job and children.

The trial court found that the Defendant had criminal convictions and behavior related to substance abuse in addition to the DUI convictions. In applying enhancement factor (1), the trial court noted the public intoxication convictions and the diverted marijuana possession charge. The trial court expressed concern that the 2006 public intoxication conviction occurred a few months before the latest DUI incident.

The State argues that the charges with no disposition listed reflected the Defendant's criminal activity and were properly considered by the trial court. We disagree. Although the trial court may consider past criminal behavior as well as convictions, the trial court should not have considered arrests or charges for which the record offers no proof. See State v. Newsome, 798 S.W.2d 542, 543 (Tenn. Crim. App. 1990). However, the trial court properly considered evidence of criminal acts resulting in diversion as prior criminal behavior. See State v. Kelley, 34 S.W.3d 471, 481 (Tenn. Crim. App. 2000).

At the sentencing hearing, the trial court did not include the charges that had been dismissed or for which there were no dispositions in its final reasoning. The trial court mentioned that no disposition was listed for the "Title 40 on a marijuana charge," but the Defendant's testimony provided proof that this diverted charge represented criminal behavior.

Although the trial court erred in applying enhancement factor (10), we conclude that the trial court did not err in ordering the Defendant to serve 200 days of his sentence in confinement based upon the Defendant's criminal behavior. The Defendant's public intoxication and marijuana possession indicate a pattern of criminal behavior involving repeated public substance abuse. See State v. Victor Wayne Browning, No. M2009-00509-CCA-R3-CD, Robertson County, slip op. at 8 (Tenn. Crim. App. Mar. 12, 2010); State v. William L. Holt, No. CCA-313, Greene County, slip op. at 2 (Tenn. Crim. App. Mar. 14, 1990). The trial court sentenced the Defendant in accordance with the principles and purposes of the Criminal Sentencing Reform Act, and he has not shown that the sentence was improper.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
JOSEPH M. TIPTON,  PRESIDING JUDGE